IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| BETTY D. COOK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | No.  09-133-DRH |
| | ) | |
| ILLINOIS DEPARTMENT | ) | |
| OF CORRECTIONS, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

NOW COMES the Defendant, ILLINOIS DEPARTMENT OF CORRECTIONS ("Department"), by and through its attorney, Lisa Madigan, Attorney General for the State of Illinois, and for its Memorandum of Law in Support of Defendant's Motion for Summary Judgment, pursuant to Federal Rule of Civil Procedure 56, states as follows:

## I.  INTRODUCTION

Plaintiff filed a complaint alleging violation of the Age Discrimination in Employment Act of 1967 ("ADEA") (29 U.S.C. §621 et seq.) and the Illinois Human Rights Act on February 20, 2009.  On August 20, 2009 this Court dismissed with prejudice Plaintiff's Illinois Human Rights Act claims.  Plaintiff's ADEA claim alleges that, starting in March 2007, the Department began to discriminate against plaintiff because of her age, 49, in violation of the ADEA.  *See* Compl. at ¶ 3. Plaintiff further alleges that as a result of this alleged discrimination she was forced to retire on June 1, 2008.  *See* Compl. at ¶ 8.

Defendant is entitled to summary judgment in this matter for several reasons.  First, the record does not contain sufficient evidence to allow a reasonable jury to find that any of the alleged

1

adverse actions occurred because of Plaintiff's age.  Second,  Plaintiff has failed to point to sufficient evidence that would allow a reasonable jury to find that she was constructively discharged.

## II. ARGUMENT

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56 (c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Miller v. Am. Airlines, Inc.*, 525 F.3d 520, 523 (7th Cir. 2008) (granting summary judgment in a case brought under the ADEA alleging discrimination); *see also Harris v. Franklin-Williamson Human Servs., Inc.*,  97 F. Supp. 2d 892, 899 (S.D. Ill. 2000) (Herndon, J.).

The ADEA prohibits employers from discriminating against employees who are 40 or older because of their age.  *See* 29 U.S.C. §§ 623(a), 631(a); *see also Martino v. MCI Commc'ns Servs., Inc., d/b/a Verizon Bus. Servs.*, 574 F.3d 447, 452 (7th Cir. 2009); *Harris*, 97 F. Supp. 2d at 904. To succeed on an ADEA claim, a plaintiff must establish that she would not have received adverse treatment ***but for*** her employer's intentional age-based discrimination.  *See Gross v. FBL Fin. Servs., Inc.*, 129 S. Ct. 2343, 2350 (2009) ("a plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision."); *accord Harris*, 97 F. Supp. 2d at 904 (citations omitted).

In order to meet her burden, Plaintiff must prove age discrimination either by relying on (1) the direct method of proof, which requires presenting direct evidence of age discrimination; or (2) by relying on the indirect, "burden shifting," method of proof outlined in *McDonnell Douglas*.  *See Martino*, 574 F.3d at 452; *Harris*, 97 F. Supp. 2d at 904.  Plaintiff has failed to offer any direct evidence that the Department took any of the alleged actions against her because of her age and therefore cannot prevail under the direct method.

2

This leaves Plaintiff to proceed under the indirect method of proof.  Under the indirect method, Plaintiff  must demonstrate that (1) she was a member of the protected class (age 40 or over); (2) she was meeting her employer's legitimate expectations; (3) despite her performance, she was he was subject to an adverse employment action; and (4) similarly situated employees who were either under 40 or substantially younger than Plaintiff were treated more favorably.  *See Martino*, 574 F.3d at 453 (citations omitted); *Harris*, 97 F. Supp. 2d at 904 (citations omitted).  If Plaintiff satisfies all four of these criteria, then the defendant may provide a legitimate, nondiscriminatory reason for the adverse employment action.  *Martino*, 574 F.3d at 453 (citations omitted). Assuming the defendant offers such a reason, Plaintiff may then challenge the stated reason as a pretext for discrimination.  *Id*.  However, the ultimate burden to prove intentional discrimination always remains with Plaintiff. *Id*.  For the purposes of this motion Defendant does not deny that Plaintiff is a member of a protected class (over 40 years of age).  However, Plaintiff fails to meet any of the other criteria.

**A.**     **PLAINTIFF'S FAILS TO PROVE SHE WAS DISCIPLINED BECAUSE OF HER AGE**

Plaintiff alleges that on six occasions she was disciplined by Casey because of her age. Largely, Plaintiff does not deny she engaged in the conduct for which she was disciplined, instead arguing that she would not have been disciplined but for her age.  The Seventh Circuit has frequently rejected the notion that courts are a "super-personnel department" to review the wisdom and judgment of employers.  *See Rabinovitz v. Pena et al.*, 89 F.3d 482, 487 (7th Cir. 1996) (citations omitted); *see also Lindsey v. Walgreen Co.*, No. 08-C-3547, 2009 WL 4730953 at *7 (N.D. Ill. Dec. 8, 2009) (holding that while the plaintiff characterized her decision [which resulted in termination] as an appropriate exercise of professional judgment, it was for [the defendant] to decide whether she

exercised that judgment properly).  As such, the only relevant question is whether Plaintiff was subjected to the complained of discipline because of her age.

At the outset, Plaintiff fails to satisfy the indirect method of proof because she cannot establish that she had been performing the legitimate expectations of the Department prior to receiving discipline in 2007.  Plaintiff joined the counseling department as a Correctional Counselor I in February 2004.  *See* STATEMENT OF UNDISPUTED MATERIAL FACTS ("SOF") at 5.  From that point forward the undisputed evidence shows that Plaintiff struggled to keep up with the demands of the counseling job.  Indeed the counselors that worked with Plaintiff when she started as a counselor reiterated the same general theme: Plaintiff was a hard worker but struggled to grasp the job.  *See* SOF 9.  This was reflected in Plaintiff's performance evaluations in both 2004 (by then Assistant Warden Allan Wisely) and 2005 (by Assistant Warden Ann Casey).  *See* Exs. 12-14. Indeed, in her 2 month performance evaluation, for the "general appraisal of employee performance" section Plaintiff was marked as "needs improvement" in 7 out of 8 categories.  *See* Ex. 12 at 1030. In response to this evaluation as a counselor Plaintiff admitted that she still had a lot to learn and was not "performing at peak efficiency."  *See* Ex. 12 at 1035.  Two months later, at her four-month performance evaluation, Plaintiff was downgraded in the category of "quality."  *See* Ex. 13 at 1019. Plaintiff did not object to this evaluation of her performance.  *See id.* at 1022.

In February 2005, Assistant Warden Ann Casey became Plaintiff's supervisor.  In February 2006 Plaintiff was disciplined and assessed a one day suspension for abandoning her post.  *See* Ex. 17.  Plaintiff does not allege that this discipline was discriminatory.  From this time up to the Spring of 2007, Casey had spoke with Plaintiff on numerous occasions to correct mistakes.  *See* SOF 21. Casey did this without imposing discipline in the hope that Plaintiff would improve.  *See* SOF 22.

4

Indeed, in a letter written by Plaintiff in January 2007, Plaintiff admits that she was aware that Casey had concerns about her job performance. *See* Ex. 19 at ¶ 3. Indeed, in that same letter, Plaintiff admitted that she was behind in her work. *See id.* By Spring 2007, however, Plaintiff had not improved and Casey was left with no choice but to start imposing discipline. *See* SOF 23. Plaintiff received discipline four (not six) times for failure to meet job expectations between April and July of 2007.[1] As explained below, each of the disciplines was the result of Plaintiff's failure to meet the reasonable expectations of the Department.

    1. *Inappropriate C.H.A.M.P.S. Entry*

In April 2007 Plaintiff was referred for discipline by her supervisor, Casey, for making unprofessional personal comments, including vulgarity, regarding an offender in the C.H.A.M.P.S. system that the Department uses to track inmate contacts and issues.[2] *See* SOF 25-26; Ex. 23. A hearing was held, for which Casey was not present, and a hearing officer who had no supervisory authority over Plaintiff, Mark Beckman, determined that the charges against Plaintiff should be sustained and recommended a written reprimand.[3] *See* Ex. 23. Plaintiff grieved this decision and the Department agreed to reduce the amount of discipline to counseling. *See* Ex. 23.

Plaintiff does not offer any direct evidence that this discipline was imposed because of her age. Plaintiff does not deny that she wrote the C.H.A.M.P.S. entry but instead argues that it was an

---

[1] Plaintiff was referred for discipline 6 times, but only received discipline 4 times. *See* Exs. 28 & 30.

[2] The entry at issue was for inmate Cobb and is included in Ex. 23.

[3] The discipline that Plaintiff received during March-July 2007 followed a "progressive discipline" system which is a list proscribed in the collective bargaining agreement which sets forth what discipline should be imposed based upon what discipline came before. *See* SOF 24; Exs. 23, 25, 27-28.

appropriate entry.  *See* Ex. 23.  Beckman found that the C.H.A.M.P.S. entry at issue was inappropriate in that it violated the institutional and administrative directives which required Department employees to remain professional.  *See* Ex. 23.  That is a professional judgement that the Department is in the best position to assess and should not be re-weighed here.  *See Rabinovitz*, 89 F.3d at 487.  While Plaintiff could not identify anyone who had made a C.H.A.M.P.S. entry similar to her, she does argue that Casey had in the past called other counselors and asked them to change C.H.A.M.P.S. entries without imposing discipline.  *See* Ex. 1 at 154:6-12.  The only person that Plaintiff immediately identified as receiving such a phone call was Deb Brink, who was the same age as Plaintiff.  *See id.* at 154:13-20.  Landreth also received such a call once when Casey could not understand an entry Landreth had made.  *See* Ex. 6 at 14:3-6.  Landreth, who is older than Plaintiff,[4] was asked to make the entry more clear and was not disciplined.  *See id.* at 14:16-15:6.  Plaintiff later claimed that both Toennies and Feazel also made inappropriate entries into C.H.A.M.P.S.  However, Plaintiff could not explain when such entries were made, how they were similarly unprofessional, or whether their supervisor, Casey, was even aware of the entries.  Regardless, Plaintiff admitted that she was not aware of anyone making an entry similar to the one she made.  *See* Ex. 1 at 155:7-10.

A person is considered to be similarly situated when she is directly comparable in all material respects.  *See Herron v. Daimler Chrysler Corp.*, 388 F.3d 293, 300 (7th Cir. 2004)*; Clifford v. Patterson Cos., Inc. & Patterson Medical Supply, Inc.*, No. 08-C-0828, 2009 WL 3852447 at *15 (N.D.Ill. Nov. 18, 2009) (citing *Hudson v. City of Chi. Transit Auth.*, 375 F.3d 552, 561 (7th Cir. 2004)).  Relevant factors the court should consider when making this determination include whether

---

[4] Casey was only at Centralia from 2005-2007, during which time Plaintiff and Brink were 48-50 and Landreth was 50-52.  SOF 1, 10, 37, 48, 49.

6

the employees reported to the same supervisor, were subject to the same standards, and possessed comparable qualifications. *See id*. In addition, the similarly situated employee must possess a "comparable set of failings" to the plaintiff. *See Clifford*, No 08-C-0828 at *15 (citing *Burks v. Wis. Dept. of Transp.*, 464 F.3d 744, 751 (7th Cir. 2006)). Indeed, the Seventh Circuit has directed that "in disciplinary cases – in which a plaintiff claims that [she] was disciplined by [her] employer more harshly than a similarly situated employee based on some prohibited reason–a plaintiff must show that [she] is similarly situated with respect to performance, qualifications, and conduct." *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617 (7th Cir. 2000) (citations omitted).

"Where both the plaintiff and those allegedly favored over [her] are within the same protected class, 'the prima facie case under the ADEA require[s] a sufficient disparity in ages.'" *Bennington v. Caterpillar Inc.*, 275 F.3d 654, 660 (7th Cir. 2001) (citations omitted). In determining what constitutes a "sufficient disparity in ages" the Seventh Circuit has opined that "a ten year difference in ages (between the plaintiff and [her] replacement) is presumptively 'substantial.'" *Id*. (a five-year difference in age between plaintiff and the employees allegedly favored was not substantial enough) (citing *Hartley v. Wis. Bell Inc.,* 124 F.3d 887, 893 (7th Cir. 1997) (a seven-year difference was not significant enough); *accord Harris*, 97 F. Supp. 2d at 905 (a 5-7 year age difference was not substantial). Where the age difference between the plaintiff and the individual treated more favorably is less than ten years, "the plaintiff still may present a triable claim if [she] directs the court to evidence that [her] employer considered [her] age to be significant." *Bennington*, 275 F.3d at 660 (citations omitted); *see also Harris*, 97 F. Supp. 2d at 905.

Here, Landreth, Brink, and Feazel are all within the protected class (over age 40). *See* SOF 1, 48, 49. As such, they can only be considered similarly situated if Plaintiff can show there was a

sufficient disparity in age. Landreth is older than Plaintiff and Brink is the same age as Plaintiff. *See* SOF 1, 48, 49. As such, neither Landreth nor Brink can be considered similarly situated. Feazel is younger than Plaintiff by nine years, which is not "presumptively substantial." *See* SOF 50; *Bennington*, 275 F.3d at 660. Where, as here, the age difference is less than ten years, Plaintiff can only present a triable claim if there is evidence that the Department considered Plaintiff's age to be significant. *See id.* Plaintiff has failed to provide any such evidence and therefore Feazel cannot, as a matter of law, be considered a similarly situated employee outside of the protected class. Furthermore, there is no evidence that Landreth, Brink, or Feazel made an unprofessional entry similar to the one for which Plaintiff was disciplined.

Toennies is not within the protected class because he is under the age of 40. *See* SOF 51. Even so, Toennies fails to be similarly situated because the evidence fails to show a specific instance where Toennies included an unprofessional personal opinion about an offender in a C.H.A.M.P.S. entry similar to the one for which Plaintiff was disciplined, or that Casey knew about such an entry. Because Plaintiff cannot establish that a similarly situated employee outside of the protected class engaged in similar conduct of which the decision maker was aware and received favorable treatment, Plaintiff cannot establish that this discipline was because of her age.

2. *Failure to See Inmates Within 90 Days*

In April 2007 Plaintiff was referred for discipline by Casey for failing to see (i.e. making contact with) 62 of the inmates on her caseload within the required 90 days. *See* SOF 27-28; Ex. 24. A hearing was held, for which Casey was not present, and a hearing officer who had no supervisory authority over Plaintiff, Michelle Taphorn, determined that, with the exception of one of the inmates (whom Taphorn found was seen within the 90 days), the charges against Plaintiff should be sustained

and recommended a 1 day suspension.  *See* Ex. 24.    Plaintiff grieved this decision and the Department agreed to reduce the amount of discipline to an oral reprimand.  *See* Ex. 24.

Plaintiff does not offer any direct evidence that this discipline was imposed because of her age.  Plaintiff claims that she did see her inmates within the 90 days but failed to log those contacts in the C.H.A.M.P.S. system.  *See* Ex. 24.  Taphorn determined that Plaintiff had ample time (13 days) to enter the contacts into C.H.A.M.P.S. and, since the inmates were not logged, there was no evidence to support Plaintiff's claim that she saw the inmates on time.  *See* Ex. 24.  Plaintiff has not identified any similarly situated person who missed a similar number of contacts.  Indeed, the only counselor, other than Plaintiff,  the evidence showed missed a contact was Landreth.  *See* Ex. 6 at 16:19-17:1.  Landreth would have been the same age older than Plaintiff at the time of the incident and therefore is in the protected class.  *See* SOF 1, 48.  Moreover, there is no evidence to suggest that Landreth missed as many contacts as Plaintiff.  Again, at best the undisputed evidence proves that Casey's decision whether or not to impose discipline had nothing to do with the employee's age.  Because Plaintiff cannot establish that a similarly situated employee outside fo the protected class engaged in similar conduct of which the decision maker was aware and received favorable treatment, Plaintiff cannot establish that this discipline was because of her age.

3. *Failure to Sufficiently Screen Inmate Visitor List*

In April 2007 Plaintiff was referred for discipline by Casey for failing to properly review an inmate file prior to authorizing his visitor list.  *See* SOF 29-30; Ex. 25.  As a result, Plaintiff approved the victim of an inmate to visit the inmate, in violation of Department policy.  *See* Ex. 25. A hearing was held, for which Casey was not present, and hearing officer Beckman determined the charges against Plaintiff should be sustained and recommended a 3 day suspension.  *See* Ex. 25.

Plaintiff does not offer any direct evidence that this discipline was imposed because of her age.  Plaintiff does not deny that she approved the victim to see the inmate  but instead argues that at the time she reviewed the inmate's master file the name of the victim was not in there.  *See* Ex. 25.  Beckman determined that there was sufficient information in the master file that Plaintiff should have known to look into the matter further.  *See* Ex. 25.  This is a professional judgement that the Department is in the best position to assess and should not be re-weighed here.  *See Rabinovitz*, 89 F.3d at 487.

Here Plaintiff does identify someone else who she alleges made the same mistake–Feazel.  However, as explained above, Feazel is within t he protected class and  was not substantially younger than Plaintiff.  *See* SOF 1, 50.  In addition, the record shows that the Department believed it was not Feazel who made this error because the signature at issue did not appear to be Feazel's.  *See* Ex. 26.  As such, there is no basis to infer discriminatory intent.

### 4. *Failure to Follow the Chain of Command*

In June 2007 Plaintiff was referred for discipline by Casey for failing to follow the chain of command.[5]  *See* SOF 34-35; Ex. 27.  Plaintiff sent an email to Deb Gordon, a Department employee in Springfield who was in charge of the C.H.A.M.P.S. system.  *See* Ex. 27.  In that email Plaintiff requested that some dates in the C.H.A.M.P.S. system be altered.  *See* Ex. 27.  A hearing was held, for which Casey was not present, and hearing officer Beckman determined Plaintiff violated the chain of command by contacting Gordon instead of Casey and recommended a 5 day suspension.  *See* Ex. 27.

---

[5] The chain of command for the counseling department was: "call A/W Casey first.  If she isn't here then go through Assistant Warden Flagg and if he isn't here, contact Warden Robert."  *See* Ex. 27 at May 27, 2007 Counseling Department Meeting Minutes.

Plaintiff does not offer any direct evidence that this discipline was imposed because of her age. Plaintiff likewise offers no similarly situated employees who were treated more favorably than her. Plaintiff does not deny that she sent the email but argues that this is what the counselors were supposed to do when they needed things changed in C.H.A.M.P.S. *See* Ex. 27. There is no evidence that anyone other than Plaintiff had done this. *See, e.g.*, Ex. 6 at 15:14-19; Ex. 5B at 124:16-20. In addition, the return email from Gordon to Plaintiff stated that these kinds of changes had to be made through Plaintiff's supervisor. *See* Ex. 27. It was Gordon who forwarded Plaintiff's email to Casey and the referral followed. *See* Ex. 27. There is no evidence to suggest Gordon knew Plaintiff's age nor that Gordon forwarded the email to Casey Because fo Plaintiff's age. Beckman determined that Plaintiff's actions did violate the requirement that employee's always follow the chain of command. *See* Ex. 27. Again, this is a professional judgement that the Department is in the best position to assess and should not be re-weighed here. *See Rabinovitz*, 89 F.3d at 487. As such, there is no basis to infer discriminatory intent.

5. *Attempting to Falsify an Official Record*

Also in June 2007 Plaintiff was referred for discipline by Casey for attempting to alter an official document. *See* SOF 34, 36; Ex. 28. This referral arose out of the same incident for which Plaintiff was referred for going outside of the chain of command discussed above. *See* Ex. 28. A hearing was held, for which Casey was not present, and hearing officer Beckman determined the charges against Plaintiff should be sustained and recommended a 10 day suspension. *See* Ex. 28. Plaintiff filed a grievance, and the discipline was expunged as duplicative because it arose from the same conduct as the previous discipline. *See* Ex. 28.

Plaintiff does not offer any direct evidence that this referral was made because of her age. Plaintiff likewise offers no similarly situated employees who engaged in similar conduct were treated

more favorably than her.  Casey asked the Department's labor relations group for guidance and was advised to seek separate discipline for falsification and chain of command charges.  *See* Ex. 29; *see also* Ex. 2 at 184:13-21.  As such, Plaintiff cannot prove any discriminatory intent.

In order to succeed on a claim of discrimination, a plaintiff must prove there was a materially adverse employment decision based upon the prohibited discrimination.  *See Martino*, 574 F.3d at 453.  In order to qualify as an adverse employment decision, the decision must be materially adverse, not merely an inconvenience or a change in job responsibilities.  *See Griffin v. Potter*, 356 F.3d 824, 829 (7th Cir. 2004) (citations omitted).  "An adverse employment action is one that significantly alters the terms and conditions of the employee's job."  *Id*.  In addition, general hostility and stray comments do not qualify as actionable adverse employment actions unless the hostility was severe and pervasive. *Id.*  Here, because the Plaintiff received no discipline, there is no adverse employment action.

### 6.  *Failure to Timely Complete Tasks*

In May 2007 Plaintiff was referred for discipline by Casey for failing to complete tasks in a timely manner.  *See* SOF 31-32; Ex. 30.  This referral was based upon incident reports filed by two non-counselor employees which alleged that Plaintiff was not classifying her inmates in a timely manner.  *See* Ex. 30.  A hearing was held, in which Casey was not present, and hearing officer Beckman determined that, because the institutional rules cited in the referral had been rescinded, the charges should be dismissed.  *See* Ex. 30.  As a result Plaintiff received no discipline.  *See* SOF 32; Ex. 30.

Plaintiff does not offer any direct evidence that this referral was made because of her age.  Indeed, this referral was based upon the incident reports written by non-counselor employees about

whom Plaintiff does not otherwise complain. *See* Ex. 30. There is no evidence to suggest that these employees knew of Plaintiff's age or that their incident reports were written because of Plaintiff's age. There is also no evidence that any other employee's who had similar incident reports written about them were not disciplined. Regardless, because Plaintiff did not receive discipline, there is no adverse employment action, and there is no basis to infer any discriminatory intent.

**B.** **PLAINTIFF'S CLAIM THAT SHE WAS NOT PROMOTED BECAUSE OF HER AGE IS NOT SUPPORTED BY THE UNDISPUTED EVIDENCE**

Plaintiff alleges that the Department refused to promote her to Correctional Counselor III because of her age. First, the undisputed evidence shows that historically there was only one Correctional Counselor III at Centralia and that after the last Correctional Counselor III retired in March 2007, Centralia has neither posted nor filled the Correctional Counselor III job. *See* SOF 7, 14, 15; Ex. 2 at 86:12-17. As such, there was no such job for Plaintiff to promote to. Second, Plaintiff has offered no direct evidence that the Correctional Counselor III job was not posted because of Plaintiff's age. Indeed, the undisputed evidence shows that the reason the Counselor III job was not posted was primarily budgetary and was made by Department officials in Springfield. *See* SOF 16. There is no evidence to suggest that these officials based their decisions upon Plaintiff's age. As such, Plaintiff's claim that the Department discriminated against her because of her age when it failed to promote her to Correctional Counselor III fails.

Plaintiff argues that because the Counselor III had historically taken care of working in receiving (where new inmates are received into the prison), the receiving assignment was the Counselor III job. Plaintiff contends that, because she took over the receiving assignment when the last Counselor III retired, she was therefore doing Counselor III work and should have been promoted. This misstates the undisputed facts. Plaintiff did take over the receiving assignment, but

did not take over any of the other tasks assigned to a Counselor III.[6]  Specifically, a Counselor III was considered to be a lead worker, with authority to review work, approve time off, and provide input into performance evaluations.  *See* Ex. 18.  Plaintiff admits she never had any of these tasks assigned to her.  *See* SOF 17.  Moreover, after the last Counselor III retired, only Counselor IIs remained in the counseling department.  *See* SOF 12.  The receiving assignment still had to be completed by someone and, absent a Counselor III, a Counselor II had to do that job.  Indeed,  the supervisor for the counseling department, Casey, checked the job description of a Counselor II to ensure that the counselor working in receiving would not be working outside of their job assignment.  Furthermore, since Plaintiff retired, the Correctional Counselor III job at Centralia has remained vacant and has still not been posted.  *See* SOF 14-15.

A change in job responsibilities alone does not constitute an adverse employment action.  *See Griffin*, 356 F.3d at 829.  In addition, Plaintiff has not identified any similarly situated person who was treated more favorably than her with respect to a Correctional Counselor III promotion.[7] Therefore, Plaintiff has failed to state a prima facie case under the indirect method.

Finally, Plaintiff has offered no evidence that the decision to have her work in receiving as

---

[6] Plaintiff was not the only counselor who received additional duties when the last Counselor III retired.  *See* SOF 12.  Because the counseling department went from having 6 counselors to 3,  the duties of those that left were divided amongst those counselors that remained.  *See* SOF 13.

[7] Plaintiff states in her complaint that the Department "wanted Plaintiff to retire so that a female, under 40 years of age, would be able to be promoted to Plaintiff's job."  Complaint at ¶ 7(F).  At her deposition Plaintiff identified said female as Feazel.  *See* Ex. 1 at 203:5-12. However, Plaintiff also admitted that she did not think Feazel was interested in the Correctional Counselor III promotion.  *See id.* at 199:8-11.  Moreover, Feazel cannot be a similarly situated person because she is within the protected class and not substantially younger than Plaintiff.  *See* SOF 1, 50.

a Counselor II was made because of her age.  Plaintiff alleges that when she went to Casey to complain about the amount of work after the Counselor III and two other counselors left Centralia, Casey stated "well, you can always take a different job or you can just retire." *See* Ex. 1 at 147:8-9. This statement is not sufficient to infer any discriminatory animus. *See Harris*, 97 F. Supp. 2d at 905-906 (statements that plaintiff should "just retire" and an offer to "buy [plaintiff] out" did not demonstrate age animus) (citing *Halloway v. Milwaukee County*, 180 F.3d 820, 825 (7th Cir.1999) (requests that an employee retire are not necessarily a reference to the employee's age.))  As such, this statement does not infer that the decision to assign Plaintiff to receiving without promoting her to Counselor III was discriminatory because of Plaintiff's age.

## C.   PLAINTIFF FAILS TO PROVE HER EVALUATIONS BY CASEY AND FLAGG WERE DISCRIMINATORY

Plaintiff makes three allegations concerning her performance evaluations.  First, Plaintiff alleges that Casey downgraded her 2006-2007 performance evaluation without doing quarterly evaluations the year prior.  Second, Plaintiff alleges that Casey did a quarterly evaluation of her in an untimely manner.  Third, Plaintiff complains that when she returned from medical leave in November 2007, Flagg re-did her 2006-2007 evaluation and did another quarterly evaluation.  Even if all of these facts are taken as true, there is no evidence that Plaintiff suffered any adverse employment action from these evaluations.  Plaintiff filed a grievance with the union regarding Casey's evaluations. *See* SOF 33.  The Department agreed that quarterly evaluations had not been done and expunged Casey's 2006-2007 evaluations. *See* SOF 33; Ex. 16.  As such, Casey's evaluations were expunged from Plaintiff's record.  Further, there is no evidence that Casey's 2006-2007 evaluations of Plaintiff were based on her age.

As for Flagg's evaluation of Plaintiff in November 2007– this was a positive evaluation completed pursuant to the grievance resolution which replaced Casey's when it was expunged. *See*

Ex. 16.  As such, there is no basis for Plaintiff to complain about Flagg's evaluation.  Regardless, with respect to all of these evaluations, there is no direct evidence that these evaluations were done because of Plaintiff's age.  Moreover, these evaluations cannot be considered adverse employments actions since (1) Casey's were expunged; and (2) Flagg's were positive.

**D.**    **PLAINTIFF'S REMAINING CLAIMS ARE NOT PERVASIVE ENOUGH TO ESTABLISH AN ADVERSE EMPLOYMENT ACTION**

Plaintiff makes a number of additional claims that she alleges show the Department's discriminatory intent.  Specifically, Plaintiff complains that the Department discriminated against her because of her age when: (1) Feazel, who was in the same position as Plaintiff,  frequently asked about Plaintiff's retirement; (2) Warden Flagg told Plaintiff, on the day she returned from vacation, that she had inmates to see; (3) Casey changed Plaintiff's job assignment three times in four months; (4) Flagg denied Plaintiff time during work hours to meet with the union to discuss her pending discipline; (5) In May 2007 Plaintiff received a counseling memo for arriving five minutes late to work; (6) Feazel knew about Plaintiff's discipline before Plaintiff; (7) Casey was not nice to Plaintiff; and (8) Casey called Plaintiff on the radio and made rude comments.  First, Plaintiff offers no evidence that any of these actions were taken because of Plaintiff's age.  In addition, as explained below, even taken together these actions are not pervasive enough to constitute an adverse employment action.

In *Griffin*, the plaintiff alleged that she suffered an adverse employment action when the defendant: changed her shift; lengthened her commute by transferring her; unfairly disciplined her; substituted a favorable evaluation for a more favorable one; issued her letters of warning; assigned her to difficult cases and gave her additional work that she perceived as outside her normal job

responsibilities; refused to approve annual leave requests when work was backlogged; and denied her a parking permit for approximately four days. *See Griffin*, 356 F.3d at 829. The plaintiff also argued that her supervisor was generally hostile to her and that in staff meetings would comment that plaintiff was a "bad influence on the office" and that plaintiff "thought she knew everything." *See id* at 829-830.

The Seventh Circuit held that "[a]n adverse employment action is one that significantly alters the terms and conditions of the employee's job . . . and none of these did." *Griffin*, 356 F.3d 824 at 829 (internal citations omitted).[8] The Seventh Circuit further held that "[g]eneral hostility and comments do not qualify as actionable adverse employment actions unless the hostility was severe and pervasive." *Id.* Indeed, the Seventh Circuit found that while the "supervisor's comments may have created an 'unpleasant' environment, these comments were not so severe and pervasive as to be actionable." *Id.* at 829-830.

In this case, like in *Griffin,* Plaintiff has not established that the actions about which she complains "significantly alter[ed] the terms and conditions of [her] job." *See id.* at 829. Indeed, many of the same complaints in *Griffin* appear here and, as in that case, do not rise to the level of an adverse employment action. *See also Beery v. Clean Seal, Inc.*, No. 3:07-CV-636-CAN, 2009

---

[8] In support of its holding in *Griffin*, the Seventh Circuit cited: *Johnson v. Cambridge Indus.*, 325 F.3d 892, 901 (7th Cir.2003) (**harder work assignments**); *Stutler v. Ill. Dep't of Corr.*, 263 F.3d 698, 702-03 (7th Cr. 2001) (**lateral transfer without loss of benefits, increased commute**); *Haugerud v. Amery Sch. Dist.*, 259 F.3d 678, 691-92 (7th Cir.2001) (**additional job responsibilities**); *Grube v. Lau Indus.*, 257 F.3d 723, 728 (7th Cir.2001) (**altered work hours, negative performance evaluations, unfair reprimands**); *Oest v. Ill. Dep't of Corr.*, 240 F.3d 605, 613 (7th Cir.2001) (**oral and written reprimands**); *Bell v. EPA*, 232 F.3d 546, 555 (7th Cir.2000) (**trivial matters**); *Brooks v. City of San Mateo*, 229 F.3d 917, 930 (9th Cir.2000) (**refused preferred vacation schedule**); *Spring v. Sheboygan Area Sch. Dist.*, 865 F.2d 883, 886 (7th Cir.1989) (**increased travel time**).

WL 4723280 at *3 (N.D.Ind. Dec. 8, 2009) ("not everything that makes an employee unhappy is an actionable adverse action. Otherwise, minor even trivial employment actions that 'an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit.'" (citing *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir.1996))).  In addition, Plaintiff offers no evidence that any of the comments by Feazel or Casey were related to Plaintiff's age. *See, e.g.*, *Halloway*, 180 F.3d at 825 (requests that an employee retire are not necessarily a reference to the employee's age.) Nor does Plaintiff allege facts to establish that these comments and Casey's alleged general hostility towards Plaintiff were sufficiently severe and pervasive to establish an adverse employment action. As such, Plaintiff has failed to prove she suffered an adverse employment action with regards to these remaining claims, and there is no basis to draw an inference of discriminatory intent.

## E.   PLAINTIFF HAS NOT SHOWN SHE WAS CONSTRUCTIVELY DISCHARGED

Plaintiff alleges in her Complaint that she was forced to retire in June 2009.  Compl. at ¶ 8. In order to prove this allegation, Plaintiff must prove constructive discharge.  To state a claim for constructive discharge, plaintiff must prove her working conditions were so intolerable that a reasonable person would have been compelled to resign. *See Rabinovitz*, 89 F.3d at 489 (citations omitted).  In so doing, the plaintiff must show that the working conditions were more than merely intolerable; they must have been intolerable in a discriminatory way. *Id*.  In addition, the plaintiff may not be unreasonably sensitive to her working environment and that she must seek redress while remaining in her job unless confronted with an aggravating situation beyond ordinary discrimination. *Id*.

First, Plaintiff's alleged constructive discharge occurred six months after the allegations contained in the EEOC charge.  Indeed, aside from the one alleged conversation with Bates in May

18

2008, there is not a single complained of event after November 2007. Plaintiff admits she had no contact with Casey after June 28, 2007. *See* SOF 38. Plaintiff further admits she had no issues after she returned from leave in November 2007 until an alleged conversation with Bates in May 2008. *See* SOF 43. If Plaintiff did not resign in November 2007, she cannot claim that her work environment was intolerable six months later when, by her own testimony, things were going better for her.

Neither does the conversation Plaintiff allegedly had with Bates in May 2008 prove constructive discharge. This conversation did not under any standard cause Plaintiff's work conditions to be unbearable. Indeed, Plaintiff's work assignment was never changed. *See* SOF 44. In *Rabinovitz,* the plaintiff claimed that he was constructively discharged (specifically, forced to resign) in October 1992 as a result of discrimination based upon his religion and age. *See Rabinovitz*, 89 F.3d at 486-487. Specifically, the plaintiff claimed that he was generally "subjected to constant mean, humiliating insults" and alleged the following acts which allegedly caused his discharge: "[a] lowered performance rating in April 1991, [] workplace restrictions of April 1991, [] refusal of his request to start work at 6 a.m., his business trip that coincided with the arrival of the EEOC investigator, and [a] comment allegedly made by [his supervisor] to the effect that plaintiff could quit if he was not happy with the job." *Id*. at 489. In that case the court held that "[a]t most, these incidents suggest that friction existed between [plaintiff] and his supervisors, not that his job was so intolerable that he was forced to resign." *Id.* at 489. Tellingly, regarding the comment by that plaintiff's supervisor, the court held that "only an unreasonably sensitive employee would feel compelled to resign after hearing such a remark." *Id*. at 489-490. Moreover the court noted that, with regard to the workplace restrictions, "not only do they not appear to be based on a

discriminatory motive, but [plaintiff] endured them for a year and a half before resigning."  *Id*. at

489.  The court concluded that "taken together, these events would not have compelled a reasonable

employee to resign" and therefore affirmed the entry of summary judgment for the defendant on the

constructive discharge claim.  *Id*. at 490.

      Here, Bates alleged statement that he was going to change her work assignment is far more

innocuous than the alleged conduct in *Rabinovitz*.  Not only would the new assignment have still

been within the counseling department, but such a change was never actually made.  *See* SOF 44.

As such, like in *Rabinovitz*, a reasonable employee would not be compelled to resign after having

heard such a remark.  Moreover, Plaintiff had already endured the bulk of the incidents about which

she now complains and had remained in her position for nearly six months, without further incident,

prior to this statement allegedly being made Bates.  As such, like in *Rabinovitz,* the Plaintiff has

failed to prove that her working conditions were unbearable and therefore Plaintiff cannot prove

constructive discharge.

### IV.  CONCLUSION

      For the foregoing reasons, the Defendant, ILLINOIS DEPARTMENT OF CORRECTIONS,

respectfully requests that this honorable Court enter summary judgment in its favor.

            Respectfully submitted,
            ILLINOIS DEPARTMENT OF CORRECTIONS,
               Defendant,
            LISA MADIGAN, Attorney General,
            State of Illinois,

            /s/Joanna Belle Gunderson
            JOANNA BELLE GUNDERSON,  # 6286292
            Assistant Attorney General
            Attorney for Defendant
            500 South Second Street
            Springfield, IL  62706
            Telephone:  (217) 782-1841
            Facsimile:  (217) 524-5091
            jgunderson@atg.state.il.us

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

BETTY D. COOK,                        )
                                      )
        Plaintiff,                    )
                                      )
    -vs-                              )        No.  09-133-DRH
                                      )
ILLINOIS DEPARTMENT                   )
OF CORRECTIONS,                       )
                                      )
        Defendant.                    )

**CERTIFICATE OF SERVICE**

I hereby certify that on March 26, 2010, I electronically filed the foregoing Memorandum

in Support of Defendant's Motion for Summary Judgment  with the Clerk of Court using the

CM/ECF system which will send notification of such filing to the following counsel of record for

Plaintiff:

Thomas O. Falb
tfalb48@yahoo.com

and I hereby certify that on March 26, 2010, I mailed by United States Postal Service, the

document to the following non-registered participant:

NONE

Respectfully submitted,

 /s/Joanna Belle Gunderson
JOANNA BELLE GUNDERSON
Illinois Bar # 6286292
Assistant Attorney General
Attorney for Defendant
500 South Second Street
Springfield, IL  62706
Telephone:  (217) 782-1841
Facsimile:  (217) 524-5091
jgunderson@atg.state.il.us